**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-0467 |
| vs. | ) | |
| | ) | |
| CITY OF NEW KENSINGTON, | ) | Judge Conti |
| DONALD E. BOWERS, MICHAEL J. | ) | Magistrate Judge Lenihan |
| LANGER, JOHN W. REGOLI, JR., | ) | |
| DOUGLAS J. AFTANAS, FRANK E. | ) | |
| LINK, JR., RICHARD JACOBUS, | ) | Re: Doc. Nos. 103 & 84 |
| CHARLES KORMAN, AND | ) | |
| CHRISTOPHER E. NICHOLS, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' Renewed Motion for Summary

Judgment at Doc. Nos. 103 & 84[1] be denied in part and granted in part.  The motion should be

granted on all claims relating to all Defendants except Defendant Jacobus.  As to Defendant

Jacobus, the motion should be denied on the claims of selective enforcement, abuse of process,

and First Amendment retaliation, and granted as to all remaining claims.

---

[1]Document number 103 is a Motion to Renew Motion for Summary Judgment filed by
Defendants at document number 84.  Consequently, the Court references both document
numbers.

II.     **REPORT**

    A.     **Background and Procedural History**

This civil rights action filed pursuant to 42 U.S.C. § 1983 arises from the alleged illegal removal of an awning from Plaintiff Craig Campbell's ("Plaintiff") unoccupied rental property,[2] Plaintiff's disagreement with a racially charged remark allegedly made by one of the Defendants, Richard Jacobus ("Jacobus"), and attempts to enforce municipal code violations allegedly perpetrated by Plaintiff. Since the filing of the initial Complaint, Plaintiff has proceeded pro se. The long and complex procedural history of the case, including an appeal to the United States Court of Appeals for the Third Circuit, is set out in great detail in the Court's Report and Recommendation dated May 18, 2009. (Doc. No. 111.) Consequently, the Court will discuss only those procedural facts arising thereafter.

On September 29, 2009, the Honorable Joy Flowers Conti entered a Memorandum Order (Doc. No. 116) adopting the Court's Report and Recommendation with respect to Defendant Charles Korman ("Korman"), finding that Plaintiff did not adduce evidence that Korman was personally involved in the claims at issue, and therefore, granting summary judgment in his favor. With respect to remaining Defendants City of New Kensington ("the City"), Donald E. Bowers ("Bowers"), Michael J. Langer ("Langer"), John W. Regoli, Jr. ("Regoli"), Douglas J. Aftanas ("Aftanas"), Frank E. Link, Jr. ("Link") and Jacobus (collectively "Defendants")[3], Judge

---

[2]On appeal, the United States Court of Appeals for the Third Circuit held that Plaintiff's claim for removal of the awning (Count I) was time barred. Campbell v. City of New Kensington, No. 07-3846, 2008 U.S. App. LEXIS 14309, at *9 (3[d] Cir. July 7, 2008).

[3]The court of appeals noted that "Campbell's suit against [Defendant Christopher E.] Nichols is barred by the doctrine of prosecutorial immunity." Campbell v. City of New Kensington, No. 07-3846, 2008 U.S. App. LEXIS 14309, at *4-5 n.2 (3[d] Cir. July 7, 2008).

Conti did not adopt the Court's recommendation to grant summary judgment as to all other Defendants because they did not address all issues identified by the United States Court of Appeals for the Third Circuit in Campbell v. City of New Kensington, No. 07-3846, 2008 U.S. App. LEXIS 14309, at *3 (3$^d$ Cir. July 7, 2008), as requested by order of this Magistrate Judge entered August 11, 2008, and August 20, 2008.

At Judge Conti's direction, the Court instructed Plaintiff to show cause why Counts II and III of the Amended Complaint should not be dismissed for failure to raise genuine issues of material fact. Specifically, the Plaintiff was ordered to come forward with all of his evidence to support those claims in Counts II and III identified by the court of appeals. The Court further indicated that should Plaintiff fail to come forward with all of his evidence on the claims of selective enforcement, malicious prosecution, abuse of process, and First Amendment retaliation, summary judgment will be granted in favor of Defendants.

On November 18, 2009, Plaintiff responded with a document addressing the claims of selective enforcement, malicious prosecution, abuse of process, and First Amendment retaliation contained within counts II and III of the amended complaint; affidavits, photographs, municipal citations and related documents were attached in an effort to demonstrate disputed issues of material fact as to these claims. (Doc. Nos. 118 & 120.)

Defendants filed a response to Plaintiff's submissions on January 8, 2010. Therein, Defendants argued that Plaintiff failed to come forward with evidence to create an issue of material fact. (Doc. No. 124.)

On March 19, 2010, Plaintiff filed a reply (Doc. No. 125) to Defendants' response and contends that he has met his burden as to all claims and desires a jury trial. (Doc. No. 125.)

**B.** **Relevant Facts**

Plaintiff, Craig Campbell, a landlord for over thirty years, owns rental property in the City of New Kensington. (Doc. No. 94 at 17.) On December 7, 2001, the City of New Kensington hired a contractor to remove an awning on Plaintiff's unoccupied rental property after receiving complaints from neighbors that the awning was a safety hazard. Defendants contend that after a site visit to the property, it was confirmed that immediate action was necessary to remove the awning from the front of the house. On December 17, 2001, Plaintiff filed a police report with the New Kensington Police Department advising that "sometime during the past week unknown person(s) took the aluminum awning from the front of his residence." (Doc. No. 85-2 at 1.) Defendant Jacobus, property maintenance/code enforcement officer for the City, admitted to taking the awning in the summer of 2003 while having lunch with Plaintiff and another individual at a restaurant in the city of Arnold. (Doc. No. 110-2 at 1, Doc. No. 94 at 17.) During that same conversation, Defendant Jacobus told Plaintiff that the problem with New Kensington is that there are too many black people. Plaintiff responded that he didn't see race as an issue in his over thirty years as a landlord in renting to black and white tenants. (Doc. No. 110-2 at 1, Doc. No. 94 at 17-18.) Plaintiff contends that he received his first summons for property he owned on Fifth Avenue about one week later. (Doc. No. 94 at 18.)

In September 2003, the City of New Kensington submitted an insurance claim to reimburse Plaintiff for the awning but the claim was denied. (Doc. No. 94 at 22.) Plaintiff, at city council meetings in 2004, demanded reimbursement from the mayor, Defendant Link, and city council members, Defendants Bowers, Regoli, Langer, and Aftanas; he also requested that

4

Defendant Jacobus stop harassing him by selectively enforcing the property maintenance code against him. (Doc. No. 94 at 9-10.) Plaintiff contends that his demands were denied. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. No. 89 at ¶ 4.) In late 2004, Plaintiff filed a private criminal complaint against Jacobus, charging him with trespass and theft. Assistant District Attorney Nichols disapproved the complaint on December 6, 2004 because it lacked prosecutorial merit. (Doc. No. 28 at ¶ 6; Doc. No. 81 at ¶¶ 8-11.) Plaintiff states that he met with the police chief, Defendant Korman, "to press charges" against Jacobus, but Korman refused. (Doc. No. 28 at ¶ 8.)

### C.  <u>Legal Standard</u>

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. <u>Id</u>. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a <u>genuine issue for trial</u>" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.

Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R.

Civ. P. 56(e)) (emphasis added by Matsushita Court).  An issue is genuine only "if the evidence

is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v.

Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).  In Anderson, the United States Supreme Court

noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the
> evidence and determine the truth of the matter but to determine whether there is a
> genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient
> evidence favoring the nonmoving party for a jury to return a verdict for that party.
> If the evidence is merely colorable, or is not significantly probative, summary
> judgment may be granted.

Id. at 249-50 (internal citations omitted).  While any evidence used to support a motion for

summary judgment must be admissible, it is not necessary for it to be in admissible form.  See

Fed. R. Civ. P. 56 (e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc.,

909 F.2d 1524, 1542 (3d Cir. 1990).  The non-movant, however, cannot rely solely on

unsupported assertions or conclusory allegations.  Anderson, 477 U.S. at 249.


**D.**    **Analysis**

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or any other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.  Thus, to state a claim for relief under this provision, the plaintiff must

demonstrate that the conduct in the complaint was committed by a person or entity acting under

color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States.  Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

1. **Individual Liability of Jacobus, Bowers, Regoli, Langer, Aftanas, and Link on alleged Constitutional Violations Identified by the United States Court of Appeals for the Third Circuit**

a. **Selective Enforcement**

In Count III of the Second Amended Complaint, Plaintiff states that Defendants retaliated against him by selective enforcement of the property maintenance code because he disagreed with a comment made by Defendant code enforcement officer Jacobus, that the problem with New Kensington is that there are too many blacks.  (Doc. No. 28 at ¶ 22.)  The law is well settled that discriminatory enforcement of a statute or law by local officials violates the Equal Protection Clause of the Fourteenth Amendment.  Cox v. Louisiana, 379 U.S. 536, 556-58 (1965).  The Equal Protection Clause provides "no . . . state shall deny any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV § 1.  The Equal Protection Clause establishes the fundamental requirement that "the State must govern impartially."  New York City Transit Auth. v. Beazer, 440 U.S. 568, 587 (1979).  It directs that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

In order to make out a claim for selective enforcement pursuant to the Equal Protection

Clause of the Fourteenth Amendment,[4] Plaintiff must establish that officials sought to enforce the property maintenance code "'on the basis of an unjustifiable standard, such as race, or religion, or some other arbitrary factor,' or when they seek to enforce the law in order 'to prevent the exercise of a fundamental right.'" Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993) (quoting United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989)). Plaintiff states that after Defendant "Jacobus heard my views I was selected for special enforcement. This is a violation of my first amendment rights." (Doc. No. 28 at ¶22.) Consequently, it appears that Plaintiff alleges that he was selected for enforcement because he exercised his First Amendment right to freedom of speech in stating his opinion to Jacobus that he saw no difference between renting to blacks and renting to whites.

In order to prevail on this equal protection claim, Plaintiff must produce evidence that similarly situated landlords who do not speak out in defense of renting to blacks have not been prosecuted for the same code violations. Barnes Found. v. Twp. of Lower Merion, 982 F. Supp. 970, 985 (E.D. Pa. 1997); see United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989). Further, Plaintiff must produce additional direct or circumstantial evidence from which a discriminatory purpose can be inferred. Barnes Found., 982 F. Supp. at 985 (citing Vill. of

---

[4]The court also includes a First Amendment retaliation analysis, infra pp. 14-18 in its effort to be comprehensive in assessing those claims identified by the court of appeals. Generally, a substantive First Amendment claim is a stronger guarantee of freedom of speech than an equal protection claim, and consequently, the equal protection claim will be subsumed by the First Amendment claim. See Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005) (holding there was no need to analyze an equal protection claim when a direct First Amendment claim was already analyzed, because the First Amendment guarantee is the stronger of the two.) Because there is some question as to whether the court of appeals construes the pro se Plaintiff's Amended Complaint as setting forth an equal protection claim, First Amendment claim, or both, the court will undertake both analyses.

Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977)).  The critical determination here is whether Defendants treated Plaintiff differently than they treat similarly situated landlords who have not exercised their First Amendment rights in this way.

The Court must view the facts in the light most favorable to Mr. Campbell, the non-moving party.  Plaintiff has come forward with several photographs of various rental properties in the vicinity of his own allegedly depicting numerous unenforced code violations.  Some photographs depict the residence of Defendant Jacobus, the Defendant who allegedly indicated to Plaintiff that the problem with New Kensington is that there are too many black people.  Plaintiff has also included the affidavit of Danielle Campbell, the individual who photographed these various properties.

Defendant Jacobus' statement that the problem with new Kensington is that there are too many black people, also raises an issue of material fact as to whether Defendants selected Plaintiff for enforcement because of his willingness to rent to black tenants.  Plaintiff states that "Mr. Jacobus retaliated by selective enforcement for my views on equitable treatment of blacks in housing opportunities.  If you want fewer blacks moving in what better way [to achieve this end than] to eliminate a landlord that rents to them."  (Doc. No. 110 at 3)  Although the issue is a close one, the Court finds that Plaintiff has come forward with enough evidence to raise a disputed issue of material fact on his claim for selective enforcement as to Defendant Jacobus only.  The Plaintiff has come forward with no evidence that the remaining individual Defendants participated in the selection of Plaintiff for enforcement because he exercised his First Amendment right in stating his opinion to Jacobus that he saw no difference between renting to blacks and renting to whites.  Instead, the only record evidence against these Defendants are the

two letters listing Defendants Bowers, Regoli, Langer, Aftanas, and Link, as recipients. (Doc. No. 94 at 9-10.) Therein, Plaintiff complains that Defendant Jacobus was harassing him in his code enforcement. These letters, however, do not relate to Plaintiff's claim that Jacobus was selectively enforcing the property Maintenance Code against Plaintiff because he exercised his First Amendment right to speak out in favor of renting to blacks. Although these individual defendants were aware of Plaintiff's complaints concerning Jacobus, there is no evidence to suggest that they were aware of Plaintiff's contention that Jacobus' actions were precipitated by Plaintiff's disagreement with Jacobus' statement that the problem with New Kensington is that there are too many black people. Consequently, Defendants' Renewed Motion for Summary Judgment on this issue should be denied as to Defendant Jacobus and granted as to all remaining individual Defendants.

### b.    <u>Malicious Prosecution</u>

In Count III of the Second Amended Complaint, Plaintiff avers a malicious prosecution claim. To establish a § 1983 malicious prosecution claim, the plaintiff must demonstrate all of the following:

> 1) the defendants initiated a criminal proceeding;
> 2) the criminal proceeding ended in plaintiff's favor;
> 3) the proceeding was initiated without probable cause;
> 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003).

Since the United States Supreme Court's decision in <u>Albright v. Oliver</u>, 510 U.S. 266

(1994), the United States Court of Appeals for the Third Circuit has been examining the impact of Albright upon § 1983 malicious prosecution jurisprudence.  Prior to Albright, the Third Circuit "had always assumed that by proving a violation of the common law tort [of malicious prosecution], the plaintiff proved a violation of substantive due process that would support a § 1983 claim for malicious prosecution . . .."  Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002).  In Albright, the United States Supreme Court held that substantive due process would not provide a basis for relief, and intimated, that the Fourth Amendment would.  Albright, 510 U.S. at 274-75.  In Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), the Third Circuit, in considering Albright's impact, noted the following:

> Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort.  Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution.  Thus, . . . a plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure.

161 F.3d at 222 (internal citations and footnote omitted).

In Gallo, the § 1983 Plaintiff had been indicted by a federal grand jury for arson in the underlying criminal proceeding.  161 F.3d at 219.  "He never was arrested, detained, or handcuffed" following the indictment, but restrictions were imposed upon him including the following: he was required to post a $10,000 bond; he was required to attend all court hearings including trial and arraignment; "he was required to contact Pretrial Services on a weekly basis; and he was prohibited from traveling outside New Jersey and Pennsylvania."  Id. at 219, 223.  The United States Court of Appeals for the Third Circuit found that, "although it is a close question," these restrictions amounted to a seizure.  Id.  The Court relied, in part, upon the decisions of the United States Supreme Court involving the concept of "seizure."  Id. at 223

(citing California v. Hodari D., 499 U.S. 621, 625-27 (1991) ("seizure is a show of authority that restrains the liberty of a citizen;" actual physical touching is not required); County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (seizure is "government termination of freedom of movement intentionally applied")). In addition, the court of appeals noted that seizures may be of different intensities, and that restrictions may amount to a seizure even though the same restrictions do not amount to an arrest. Gallo, 161 F.3d at 223.

Here, Plaintiff has come forward with no evidence that he has suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Plaintiff has only suggested that he was required to appear for proceedings in front of the magistrate judge. Pursuant to the teachings of Gallo, and the fact that the Court of Appeals viewed the facts therein as a close case, Plaintiff's required attendance at court hearings here, without more, cannot constitute a seizure. See, e.g., Holmes v. McGuigan, 184 Fed. Appx. 149, 151 (3d Cir. 2006) (plaintiff did not suffer seizure for purposes of § 1983 malicious prosecution claim where only deprivation of liberty that resulted from traffic citation was requirement to appear in court); Benard v. Washington County, 465 F. Supp.2d 461 (W.D. Pa. 2006) (Fourth Amendment seizure did not occur where plaintiff released on her own recognizance, required to notify court and bail authority if she changed address, and required to attend court proceedings). Consequently, Defendants' Renewed Motion for Summary Judgment on the issue of malicious prosecution should be granted.

Further, Plaintiff states that he was found guilty on at least one of the charges. (Doc. No.

118 at 3.)  Consequently, Plaintiff cannot show that the criminal proceeding ended in his favor.[5]

Therefore, Defendants' Motion for Summary Judgment on Plaintiff's claim for malicious prosecution should be granted.

### c.      Abuse of Process

An action for abuse of process is quite different than an action for malicious prosecution. The United States District Court for the Middle District of Pennsylvania has considered the following:

> "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . [Malicious prosecution] has to do with the wrongful initiation of such process, while abuse of civil process [or criminal process] is concerned with a perversion of a process after it is issued."

Bristow v. Clevenger, 80 F. Supp.2d 421, 430 (M.D. Pa. 2000) (quoting McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (internal quotations and citations omitted)).  Consequently, Plaintiff will prevail on a § 1983 claim for abuse of process where "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law."  Bristow, 80 F. Supp.2d at 431 (quoting Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (other citations omitted)). Again, the Bristow court explained as follows:

---

[5]Plaintiff's claim for malicious prosecution is also barred by the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994).  That is, when a § 1983 claim would "impug[n] the validity of the plaintiff's underlying conviction," a plaintiff is precluded from bringing that claim "unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  Giles v. Davis, 427 F.3d 197, 209 (3d Cir. 2005) (citing Heck, 512 U.S. at 477).  Plaintiff's success on his claim for malicious prosecution requires favorable termination on the underlying charge.  See Giles, 427 F.3d at 210.  Plaintiff states that he was convicted on the vacant structure charge, and his conviction was not overturned on appeal.  (Doc. No. 118 at 3.)  Hence, Plaintiff's malicious prosecution claim is necessarily barred.

Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." . . . "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." . . . "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"

Bristow, 80 F. Supp.2d at 431 (internal citations omitted).

Again, although a close question, Plaintiff has come forward with evidence of definite acts aimed at an objective outside the legitimate use of process: Plaintiff attempts to establish through the alleged selective enforcement against him, that Defendant Jacobus "did his best to make life in New Kensington unbearable to do business." (Doc. No. 118 at 3.) Plaintiff has raised an issue of material fact as to whether Jacobus used his code enforcement authority in an effort to stop Plaintiff from doing business there, rather than for the sole purpose of securing convictions for the code violations in issue. Hence, Plaintiff's evidence suggests that the code enforcement proceedings against him could have been perverted for the illegitimate objective of impeding Plaintiff's ability to do business in New Kensington. As to Defendants Bowers, Regoli, Langer, Aftanas, and Link, however, Plaintiff has come forward with no evidence that these individual Defendants participated in Jacobus' actions or that they shared in his alleged objective of thwarting Plaintiff's efforts to do business in New Kensington. Consequently, Defendants' Motion for Summary Judgment on the issue of abuse of process should be denied as to Defendant Jacobus, and granted as to all remaining individual Defendants.

### d.    First Amendment Retaliation

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. CONST. amend. I.  The First Amendment right to free speech is incorporated into the Fourteenth Amendment Due Process Clause, and for that reason is applicable to the states.  See Miller v. Clinton County, 544 F.3d 542, 545 n.1 (3d Cir. 2008).  Although plaintiff does not allege he was deprived of his right to speak directly, "[r]etaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under § 1983."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).

In order to establish retaliation in violation of the First Amendment pursuant to § 1983, a plaintiff must prove that (1) he was engaged in constitutionally protected speech, (2) he was treated adversely by a state actor, and (3) the protected speech was a substantial or motivating factor in causing the retaliation.  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  The question whether the speech is protected is one of law, while the remaining questions are questions of fact.  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).

All speech, except for certain narrow categories,[6] is protected by the First Amendment.  Here, Plaintiff's statement to Jacobus that he didn't see race as an issue in his over thirty years as

---

[6]Examples of the narrow categories of speech deemed unworthy of full First Amendment protection include obscenity, "fighting words," and libel.  R.A.V. v. City of St. Paul, 505 U.S. 377, 382-90 (1992).

a landlord in renting to black and white tenants is protected speech. Next, Plaintiff has come forward with record evidence that he was treated adversely by a state actor, Defendant Jacobus, the code enforcement officer for the City, specifically that he was selected for code enforcement when other property owners in the vicinity were not given citations for code violations.

Finally, Plaintiff has raised an issue of fact as to whether his protected speech was a substantial or motivating factor in causing the retaliation. The Court of Appeals for the Third Circuit has held that the causation element for establishing a retaliation claim under § 1983 is subject to the same standard and analysis as is applied to a Title VII retaliation claim. Brennan v. Norton, 350 F.3d 399, 421 (3d Cir. 2003). Two main factors are relevant to this analysis: (1) timing and/or (2) evidence of ongoing antagonism. Abramson v. William Patterson Coll., 260 F.3d 265, 288 (3d Cir. 2001) ("Temporal proximity . . . is sufficient to establish the causal link. [A] plaintiff can [also] establish link between his or her protected behavior and subsequent [adverse employment action] if the employer engaged in a pattern of antagonism in the intervening period.").

In the first prong, there must be a close temporal proximity between the protected activity and the adverse employment action. Id. While the court of appeals has not enumerated a stringent formula for what is considered to be too long if a gap between the protected activity and adverse action, the courts have held that a time span of several months is too great. See Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004) (two months too long to permit an inference of causation); George v. Genuine Parts Co., No. 04-108, 2007 U.S. Dist. LEXIS 5373, at *34-35 (W.D. Pa. Jan. 25, 2007) (holding that although suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of

retaliatory motive, especially where an obvious and unimpeached non-retaliatory motive exists"). The United States Court of Appeals for the Third Circuit has been somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case. See Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); but cf. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where nineteen months passed following protected activity and adverse employment action: "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."); Quiroga v. Hasbro, Inc., 934 F.3d 497 (3d Cir. 1991) (affirming lower court's determination that the timing of the plaintiff's discharge alone did not raise an inference of retaliation). Timing, however, in connection with other types of suggestive evidence, is clearly sufficient to demonstrate the causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). For example, the court of appeals held that timing combined with evidence of vague or inconsistent reasons given by an employer for an employee's termination was sufficient to satisfy the causation prong of the prima facie case. Abramson, 260 F.3d at 289 ("Here, as we found in or discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986); see EEOC v. L.B. Foster Co., 123 F.3d 746, 753-54 (3d Cir. 1997), cert. denied, 522 U.S. 1147 (1998).

In this case, Plaintiff submits his own affidavit indicating that his conversation with Jacobus concerning black people in New Kensington occurred on May 12, 2003. (Doc. No. 118-2 at 1.) Plaintiff testified in deposition that one week subsequent to this conversation, he received his first summons for the Fifth Avenue property; the subject of the summons concerned the back porch. (Doc. No. 94 at 18.)[7] In addition to temporal proximity, other evidence relating to an intervening "pattern of antagonism" may also be admitted to raise the inference that Plaintiff's exercise of his First Amendment right was the cause of the adverse action. See Woodson, 109 F.3d at 920-21 (3d Cir. 1997); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993). "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Kachmar, 109 F.3d at 178. "The element of causation, which necessarily involves an inquiry into the motives of a [defendant], is highly context-specific." Id.

Here, the Plaintiff has come forward with some evidence of Defendant Jacobus' motive for retaliating against Plaintiff: Plaintiff's willingness to rent to black people in spite of Defendant Jacobus' statement that "the trouble with New Kensington is that there are too many black people." As discussed above, Plaintiff has come forward with some evidence in support of his claims of inequality in enforcement of code provisions to raise an issue of material fact. Plaintiff has come forward with no evidence, however, that the remaining individual Defendants participated in the alleged retaliation, or that they had any motive to do so. Consequently, Defendants' motion for summary judgment on the issue of First Amendment retaliation should

_____

[7]Plaintiff does not include a copy of the citation with his submissions to the Court.

18

be denied as it relates to Defendant Jacobus, and granted as to all remaining individual

Defendants.

### e. New Kensington ordinance No. 161-1

As noted by the Court of Appeals, liberally construed, Count II of Plaintiff's Second

Amended Complaint appears to allege that "one of the City ordinances used to gain access to his

property in order to write up code violations against him is unconstitutional." Campbell, No. 07-

3846, 2008 U.S. App. LEXIS 14309, at *8. Earlier in its Opinion, the Court of Appeals states

that Plaintiff alleged that "New Kensington ordinance No. 161-1 (allowing warrantless trespass

and entry into buildings) was unconstitutional." Id. at *3. In Count II of the Second Amended

Complaint, Plaintiff states that "Code enforcement trespasses and enters buildings without a

search warrant" and that this violates the Fourth Amendment.[8] (Doc. No. 28 at ¶ 15.) Ordinance

No. 161-1 appears to adopt the International Property Maintenance Code. Section 104.4 provides

as follows:

> **104.4 Right of entry.** The code official is authorized to enter the structure or
> premises at reasonable times to inspect subject to constitutional restrictions on
> unreasonable searches and seizures.

International Property Maintenance Code, International Code Council § 104.4 (2003) (emphasis

added). The Code subjects the actions of officials to the restrictions required by the Fourth

Amendment. Consequently, the Code, on its face, does not violate the Fourth Amendment, and

---

[8]Plaintiff, at Count II, does not allege that the ordinance affects some groups of citizens differently than others and thereby violates the Equal Protection clause of the Fourteenth Amendment.

Plaintiff's attempt to establish that New Kensington's ordinance violates his Fourth Amendment rights must necessarily fail[9]. Hence, summary judgment should be granted on this issue as to all individual Defendants.

## 2.    Qualified Immunity

State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The first inquiry under a qualified immunity analysis is whether the plaintiff has established a violation of a "clearly established constitutional right."

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

---

[9]Plaintiff also mentions his constitutional right to trial by jury in Count II of the Amended Complaint.  (Doc. No. 28 at ¶ 19.)  He indicates that a Code violation is a summary offense carrying a 3 month jail term or maximum $1000 fine.  As implicitly recognized by Plaintiff in paragraph 19 of the Second Amended Complaint, his Sixth Amendment right to a jury trial is reserved for those offenses viewed by the legislature as "serious," and that a potential sentence in excess of 6 months' imprisonment is sufficiently severe by itself to characterize the offense as "serious."  Blanton v. City of North Las Vegas, 489 U.S. 538, 543 & n.7 (1989).

Plaintiff also implicitly recognizes at paragraph 19 of the Second Amended Complaint that any claim of Double Jeopardy must fail because "jeopardy doesn't attach at the hearings." (Doc. No. 28 at ¶ 19.)  See United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977) (double jeopardy protection triggered only when defendant placed in jeopardy; jeopardy attaches when jury is empaneled and sworn, or, in bench trial, when judge begins to receive evidence).

The second inquiry concerns the reasonableness of the defendant's actions. The test for qualified immunity is based on objective reasonableness, that is , "whether a reasonable officer could have believed [the challenged action] to be lawful, in light of clearly established law and the information the [ ] officers possessed." Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994) (quoting Anderson v. Creighton, 483 U.S. at 641). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." Giuffre, 31 F.3d at 1255 (internal quotation omitted). It is the defendant's burden to establish that they are entitled to qualified immunity. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989).

In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court clarified the two-step qualified immunity inquiry. The Court directed that, in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary. Id. If the plaintiff's factual allegations do show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. Id. at 201-02. Most recently, in Pearson v. Callahan, 129 S. Ct. 808 (2009), the United States Supreme Court concluded that while the two-step sequence identified in Saucier "is often appropriate, it should no longer be

regarded as mandatory." <u>Id</u>. at 818.

As to individual Defendants Bowers, Regoli, Langer, Aftanas, and Link, the Court need not reach the issue of qualified immunity because as discussed, <u>supra</u> pp. 7-10, 13-19 these individual Defendants' Motion for Summary Judgment should be granted on all underlying constitutional claims. <u>See</u> <u>Saucier</u>, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

With regard to Defendant Jacobus, Plaintiff has come forward with some evidence to raise an issue of material fact as to his claims for selective enforcement, abuse of process and First Amendment retaliation. In a qualified immunity analysis, the district court is required to view the facts in the light most favorable to Plaintiff. <u>See</u> <u>Saucier</u>, 533 U.S. at 201. Although the qualified immunity inquiry is not an analysis on the merits of Plaintiff's claims for selective enforcement, abuse of process, and/or First Amendment retaliation, the respective analyses of these claims, <u>supra</u> pp. 7-10, 13-18, "serve[] as a touchstone of the established law of which a reasonable officer may be presumed to have been aware." <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 201 (citing <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)). The analysis must be conducted in light of the specific facts and circumstances of the case. <u>Id</u>. Therefore, the district court must consider the "'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"

<u>Pearson</u>, 129 S. Ct. at 822 (quoting <u>Wilson</u>, 526 U.S. at 614).

With regard to Plaintiff's claim for selective enforce, at the time of Plaintiff's conversation with Jacobus on May 12, 2003, it would have been clear to a reasonable municipal code enforcement officer that selectively enforcing the municipal code against a landlord because he disagreed with a racist remark was unlawful.  See <u>Holder</u>, 987 F.2d at 197; <u>Schoolcraft</u>, 879 F.2d at 68.  Consequently, Defendant Jacobus is not entitled to qualified immunity on Plaintiff's claim of selective enforcement.

Likewise, with regard to Plaintiff's abuse of process claim, it would have been clear to a reasonable municipal code enforcement officer by May 12, 2003, that instituting legal process against the Plaintiff in an attempt to thwart his ability to do business in New Kensington was unlawful.  See <u>Brown v. Johnston</u>, 675 F. Supp. 287, 290 (W.D. Pa. 1987) ("When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse fo process can be maintained.").  Consequently, Defendant Jacobus is not entitled to qualified immunity on Plaintiff's claim for abuse of process.

Finally, with regard to Plaintiff's First Amendment retaliation claim, it would have been clear to a reasonable municipal code enforcement officer by May 12, 2003, that retaliating against a local landlord for speaking out in favor of renting to black tenants by selectively enforcing the property maintenance code against him was unlawful.  See <u>Anderson</u>, 125 F.3d at 161-62.  Hence, Defendant Jacobus is not entitled to qualified immunity on Plaintiff's claim for First Amendment retaliation.

Consequently, Defendant Jacobus' Motion for Summary Judgment on the issue of

qualified immunity should be denied in its entirety.

### 3. **Municipal Liability**

Defendants argue that Plaintiff has produced no evidence to support his claims against the City and the remaining Defendants in their official capacities in that no actions were taken pursuant to a policy of the City which deprived individuals of their civil rights.

In Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Id. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), quoted in, Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may

consist of a course of conduct so permanent and widespread that it has the force of law.

Andrews, 895 F.2d at 1480.  To establish municipal liability based upon a custom or practice, the

plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could

occur and that the decision-maker acted with deliberate indifference to this risk.  Berg v. County

of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)  Finally, Plaintiff must show a causal connection

between the custom or policy and the violation of the constitutional right.  Bielevicz v. Dubinon,

915 F.2d 845, 850-51 (3d Cir. 1990).  That is, a plaintiff must demonstrate an "affirmative link"

or "plausible nexus" between the custom or practice and the alleged constitutional deprivation.

Bielevicz, 915 F.2d at 850-51.

Here, Plaintiff has come forward with no evidence to raise an issue of material fact as to

whether a decision-maker from New Kensington had notice that a violation of Plaintiff's

constitution rights could occur in Jacobus' alleged selective enforcement, abuse of process and

First Amendment retaliation, and was deliberately indifferent to this possibility.  See Berg, 219

F.3d at 276.  That is, there is no record evidence that any of the individual Defendants knew of

Jacobus' statement to Plaintiff, Plaintiff's response thereto, and subsequent action taken by

Jacobus, allegedly in response to Plaintiff's disagreement.  Consequently, Defendant City of New

Kensington is entitled to judgment as a matter of law on the issue of municipal liability, and

summary judgment should be granted in its favor.

III.    **CONCLUSION**

It is respectfully recommended that the Defendants' Renewed Motion for Summary

Judgment at Doc. Nos. 103 & 84 be granted in part and denied in part.  The motion should be

granted on all claims relating to all Defendants except Defendant Jacobus. As to Defendant

Jacobus, the motion should be denied on the claims of selective enforcement, abuse of process,

and First Amendment retaliation, and granted as to all remaining claims.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

Federal Rule of Civil Procedure 72(b)(2), and Rule 72.D.2.of the Local Rules for Magistrate

Judges, the parties are allowed fourteen (14) days from the date of service to file objections to

this Report and Recommendation. Any party opposing the objections shall have fourteen (14)

days from the date of service of objections to respond thereto. Failure to file timely objections

may constitute a waiver of any appellate rights.


 s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: August 16, 2010

cc:  All counsel of record
       via electronic filing

     Mr. Craig Campbell
     435 Violet Drive
     Lower Burrell, PA 15068